[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12935
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00404-KOB-PWG-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ERNEST LASHAWN STARKS,
CAMERON RASHUN BYRD,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(September 3, 2013)

Before HULL, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

        Ernest Lashawn Starks and Cameron Rashun Byrd appeal their convictions

after a jury trial on carjacking and firearms offenses and the sentences they

received for those convictions. Both contend the evidence was insufficient to support their convictions. In addition, Byrd argues portions of his sentence violate the Constitution. And Starks asserts that he should not have been tried together with Byrd and that his sentence is substantively unreasonable. After careful review, we affirm in all respects.

I.

A.    Pretrial

Police arrested Starks, Byrd, and two other men — Kevin Holmes and Thomas Omar Flowers — on suspicion that they were involved in a carjacking and a convenience-store robbery. Subsequently, a grand jury issued an indictment charging Byrd with aiding and abetting a carjacking, in violation of 18 U.S.C. § 2119 (1), brandishing a firearm in connection with the carjacking, in violation of 18 U.S.C. § 924(c), and carrying and using a firearm in connection with an armed robbery, in violation of 18 U.S.C. § 924(c). Starks was charged with aiding and abetting a carjacking and brandishing a firearm in connection with the carjacking.

Before their cases went to trial, Starks filed a "Motion to Sever Due to *Bruton* Issue" under Federal Rule of Criminal Procedure 14, seeking severance of his trial from Byrd's. He contended a joint trial would violate his Sixth Amendment rights, as explained in *Bruton v. United States*, 391 U.S. 123 (1968), if the government introduced Byrd's out-of-court confession. In response, the

2

government represented that Byrd's confession would not be entered into evidence unless Byrd took the stand, so *Burton* was not implicated. The district court agreed and denied Starks's motion. Byrd's confession was not offered at trial.

B.    Trial

We recount the facts adduced at trial in the light most favorable to the verdict, resolving all reasonable inferences and credibility evaluations in favor of the jury's finding of guilt. *United States v. Kaplan*, 171 F.3d 1351, 1355 n.13 (11th Cir. 1999).[1] Byrd, Flowers, and Holmes left the Alabama A&M University dorms in a Jeep Cherokee to buy cigarettes late on the evening of May 11, 2011. While they were out, Byrd received a phone call from Starks, Flowers's cousin, inviting the three over to his house. When they arrived, Starks was in the driveway, and he told Flowers that he wanted to drive the Jeep to buy cigars. Once they left his house, however, Starks began talking with Byrd, who was sitting in the passenger seat, about committing a robbery to get money. Because Flowers did not want his mother's Jeep used in a robbery, Starks parked at a liquor store to scout for a car they could steal to use.

Unfortunately, an individual identified as K.E.N. pulled his Ford Taurus into a parking spot in the liquor store lot right next to the Jeep and left his doors unlocked. While K.E.N. was inside purchasing beer, Starks asked who in the Jeep

---

[1] This also means that we do not dwell upon contrary evidence the jury was entitled to disbelieve. *See United States v. Hernandez*, 433 F.3d 1328, 1333-34 (11th Cir. 2005).

was going to "take the man hostage."  Apparently, Byrd volunteered; he got into

the Taurus, and, when K.E.N. returned, Byrd was waiting in the backseat with a

handgun pointed at K.E.N.  Byrd held the gun to K.E.N's head and told him to

drive or, according to K.E.N., "he's going to blow my head off."  After K.E.N. had

driven about 50 yards and down an alley, Byrd directed him to get out, lie down on

the asphalt, and stay still while Byrd drove the Taurus away.  As his car drove

away without him, K.E.N. recalled seeing a Jeep following it.

At trial, K.E.N. was unable to identify his assailant or anyone else involved.

He also testified that, to the best of his knowledge, there were at most three men

involved in the carjacking, the one in his backseat and two he saw when he pulled

his car into the liquor store lot.  Moreover, he did not remember interacting with

anyone except for the man in his backseat.  Holmes, on the other hand, testified

that, once the Taurus was parked in the alley and K.E.N. was on the ground, Starks

got out of the Jeep holding a handgun and ordered K.E.N. not to look up or "we'll

come back and execute you . . . ."  Then, Holmes and Flowers testified, Starks

ordered one of them to join Byrd in the Taurus, and when neither volunteered,

Starks waived his pistol at Flowers, who reluctantly got in K.E.N.'s car.

Not long after Byrd and Flowers drove away in the Taurus, however, it

broke down.  Starks picked the two up in the Jeep, but said he still intended to get

some cash, even without a getaway car.  When they passed a convenience store

4

with the clerk outside of his station mopping the aisles, Starks identified his mark and said it was "the perfect time to go in."  With the car parked beside the store, Byrd got out with his handgun, and Starks gave him a pillowcase.  Starks then ordered Flowers out of the car and, when Flowers refused, Starks cocked his pistol and told Flowers, "you don't have an option, you're going in the store."  So Flowers took a knife Starks offered and entered the store with Byrd.  Meanwhile, Starks repositioned the Jeep to be ready to flee when they returned.

Dan Otieno, the clerk, testified that two men entered the store that night — one tall and skinny, wearing a "bandana on his face," and the other "short and plump" with a ski mask.  The tall, skinny man put a handgun to Otieno's head, ordered him to open the register, and then told him to get on the floor or, the man said, "I'll blow your head off."  Once the two men had emptied the register, they ran from the convenience store and hopped in the Jeep.  Otieno followed them outside, where he saw a Jeep leaving the lot.  At trial, Flowers identified himself as the short man in the ski mask and Byrd as the tall man wearing a bandana.

At the close of the government's case-in-chief, Starks moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the court denied, but he did not renew the motion after presenting his case.   Byrd never moved for a judgment of acquittal.  The jury convicted Byrd and Starks on all charges.

5

C.    Sentencing

Prior to sentencing, the probation office prepared presentence investigation reports (PSIs) for Starks and Byrd.  Byrd's PSI indicated that he had no prior criminal history.  His sentencing guidelines range on the carjacking count was 41 to 51 months' imprisonment.  Both of his other convictions carried minimum statutory penalties to run consecutive both to one another and his carjacking sentence.  His conviction for brandishing a firearm in connection with the carjacking subjected him to a 7-year mandatory minimum, and his conviction for carrying and using a firearm in connection with the convenience-store robbery a minimum of 25years.  18 U.S.C. § 924(c)(1)(A)(ii), (c)(1)(A)(i).   Byrd did not object, either to the PSI or to the sentence the court ultimately pronounced.  The district court varied downward on the carjacking count to 15 months, resulting in a total sentence with the mandatory minimums of 399 months.

The PSI prepared in anticipation of Starks's sentencing calculated that, on the carjacking count, his guidelines range was 51-63 months in prison.  His conviction for brandishing a firearm in connection with the carjacking carried a statutory mandatory minimum consecutive sentence of 7 years' imprisonment. Prior to sentencing, the government filed a memorandum asking the court to vary upwards from Stark's guidelines range, arguing the PSI under-represented his criminal background and failed to fully account for his role in the carjacking and

6

robbery.  In support of these contentions, the government presented at sentencing an FBI Agent who testified that Byrd and Holmes had given statements indicating Starks had bragged about or attempted to involve them in several other armed robberies both prior to and after May 11, 2011.  And Flowers testified Starks told him he had shot someone in 2009.  Starks objected, but the district court found that Starks's guidelines range under-represented his criminal history and "that not only [was Starks] present on May 11, 2011, but . . . orchestrated this event that brought such problems on so many people."  After discussing at length how the 18 U.S.C. § 3553(a) factors affected the decision, the court varied upward to a sentence of 96 months' imprisonment on the carjacking count, resulting in a total sentence of 180 months' imprisonment.

D.    Appeal

Byrd and Starks timely appealed both their convictions and sentences on several grounds.  Byrd contends the evidence was not sufficient to support his convictions because, without the questionable testimony of Flowers and Holmes, the man who carjacked K.E.N. and held the gun to Otieno's head during the robbery just as easily could have been one of the others.  He also contends his mandatory minimum sentences are unconstitutional.  Starks argues the evidence was insufficient to convict him of either the carjacking or brandishing a weapon during it, especially considering that the victim never claimed to encounter anyone

7

other than the man in his backseat.  He also claims he should not have been tried

along with Byrd and that, in light of the disparity between the sentences he and

Byrd received for their carjacking convictions, his sentence is substantively

unreasonable.  We address each contention in turn.

## II.

Starks and Byrd both claim the evidence was insufficient to convict them.

Starks says the only evidence that he was present for the carjacking or brandished a

firearm during it was the testimony of Holmes and Flowers, which was self-serving

and inconsistent with that of K.E.N., who did not identify him.  Byrd similarly

points out that neither K.E.N. nor Otieno identified him, and only Holmes and

Flowers, whose testimony is dubious and inconsistent, implicate him.

Byrd did not move for a judgment of acquittal based upon insufficient

evidence.  And, although Starks made a proper motion at the close of the

government's case, he did not renew the motion at the close of evidence.

Therefore, although we generally review challenges to the sufficiency of the

evidence *de novo*, both Byrd and Starks "must shoulder a somewhat heavier

burden:  we will reverse . . . only where doing so is necessary to prevent a manifest

miscarriage of justice."  *United States v. Fries*, No. 11-15724,  — F.3d — , 2013

WL 3991917, at *3 & n.5 (11th Cir. Aug. 6, 2013) (internal quotation marks

omitted).  "This standard requires us to find either that the record is devoid of

8

evidence of an essential element of the crime or that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Id.* at *3 (internal quotation marks omitted).

We cannot conclude that standard is satisfied with respect to either defendant's convictions. Holmes and Flowers both testified that Starks chose K.E.N.'s car to steal, that Byrd was the man K.E.N. testified made him drive his car from the liquor store lot into the alley with a gun to his head, and that Starks threatened Flowers with a pistol to force him to join Byrd in driving K.E.N.'s Taurus away from the scene. And both testified Byrd was the man who robbed the convenience store at gunpoint.

As Starks and Byrd point out, there were certainly reasons the jury could have disbelieved that testimony. Both witnesses' testimony at trial diverged from statements they made to police on the night of the crimes and was inconsistent with the victims' testimony. Both witnesses got wrong whether Starks had disposed of clothing used in the commission of the crimes. Some extraneous details in Holmes's testimony diverged from security camera videos and photos presented at trial, and he has a criminal record. And Flowers conceded he was cooperating in hopes of a lenient sentence for his part in the debacle.

But the jury apparently did believe their testimony despite all of this, and they were entitled to do so. We may only reject a jury's decision to credit

9

testimony where it is "incredible as a matter of law," that is, "if it relates to facts the witness could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (internal quotation marks omitted). We may not reject a jury's apparent reliance on a witness simply because there are discrepancies between his testimony and his prior statements to police. *See United States v. Calderon*, 127 F.3d 1314, 1324-25 (11th Cir. 1997) (holding jury was free to rely upon testimony of witness who admitted prior testimony in related case was untruthful; "the fact that the witness has consistently lied in the past . . . does not make his testimony incredible" (alteration and internal quotation marks omitted)). Any inconsistences Starks and Byrd point to "are classic jury arguments . . . , not a reason to disregard the jury's determination . . . ." *United States v. McGuire*, 706 F.3d 1333, 1336 (11th Cir.), *cert. denied*, 133 S. Ct. 1744 (2013). Moreover, "the uncorroborated testimony of an accomplice is sufficient to support a conviction if it is not on its face incredible or otherwise insubstantial," even if the accomplice has a "prior criminal history" and admits to testifying in exchange for beneficial prosecutorial treatment. *United States v. Milkintas*, 470 F.3d 1339, 1344 (11th Cir. 2006). And even if Holmes's and Flowers's testimony differed from that of the victims, asking that we reverse the convictions for that reason "represents nothing more than an invitation to this Court to revisit the credibility determinations of the jury," which

10

we may not do. *United States v. Thompson*, 422 F.3d 1285, 1291-92 (11th Cir. 2005). "It is well-established that credibility determinations are the exclusive province of the jury." *Id.* (internal quotation marks and alteration omitted).

Although the testimony of Holmes and Flowers may be, as Starks and Byrd contend, suspect, it was not incredible as a matter of law. And neither Byrd nor Starks argues, nor could they, that they may surmount their heavy burdens on appeal if the jury could properly have credited that testimony. There is no manifest miscarriage of justice, and we therefore affirm Starks's and Byrd's convictions.

III.

Byrd argues that his two statutory mandatory minimum sentences are unconstitutional, both as cruel and unusual punishment prohibited by the Eighth Amendment and as a violation of the separation-of-powers doctrine. Because Byrd raised no such objection in the district court, we review only for plain error. *United States v. Belfast*, 611 F.3d 783, 815 (11th Cir. 2010). We share the district court's concern that Byrd's sentence, due to the mandatory minimums he faced, seems "out of proportion to this particular crime in this particular situation and for this particular defendant," a first-time offender who made a grave mistake falling in with the wrong crowd but who was repentant and otherwise a promising student. But "[a]n error cannot be plain if such error is not obvious or clear under current law." *United States v. Hernandez-Gonzalez*, 318 F.3d 1299, 1302 (11th Cir. 2003).

11

And "where neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error . . . ." *United States v. Gerrow*, 232 F.3d 831, 835 (11th Cir. 2000) (internal quotation marks omitted).

As Byrd forthrightly concedes, we have held the mandatory minimums in § 924(c) constitutional under the Due Process Clause. *United States v. Hamblin*, 911 F.2d 551, 555 (11th Cir. 1990); *see also United States v. Castaing-Sosa*, 530 F.3d 1358, 1362 (11th Cir. 2008) ("[D]istrict court[s] remain[] bound by statutes designating mandatory minimum sentences even after the remedial holding of *United States v. Booker*, 543 U.S. 220 . . . (2005)."). And other circuits that have squarely addressed Eighth Amendment challenges like Byrd's have rejected them. *E.g.*, *United States v. Major*, 676 F.3d 803, 812 (9th Cir.) (rejecting identical challenge to nearly 750-year sentence imposed under § 924(c)'s mandatory minimum provision), *cert. denied* 133 S. Ct. 280 (2012); *United States v. Clark*, 634 F.3d 874, 877-78 (6th Cir. 2011) (rejecting Eighth Amendment challenge to § 924(c) consecutive mandatory minimums that resulted in nearly 148-year sentence). Moreover, as Byrd acknowledges, binding precedent squarely forecloses his argument that the mandatory minimums violate the separation of powers by depriving the sentencing judge of discretion. *See United States v. Paige*, 604 F.3d 1268, 1274 (11th Cir. 2010). Accordingly, Byrd cannot show his

12

sentence was unconstitutional under the plain-error standard we must apply to his claim.

IV.

Starks contends the district court erred in denying his "Motion to Sever Due to *Bruton* Issue." Despite Starks's assertion in his brief, however, no *Bruton* issue could possibly arise in this case because no out-of-court confession by a co-defendant was introduced into evidence. *See Bruton*, 391 U.S. at 124-26. Instead, Starks claims he should not have been tried with Byrd because he was not charged in connection with the robbery but the jury may have been confused or considered testimony about his involvement in the robbery in convicting him.

Because this argument is new on appeal, we review only for plain error. *See Belfast*, 611 F.3d at 815. "[A]t least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde–Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). Defendants indicted together are usually tried together, and a district court is only required to sever their trials in "exceptional circumstances" where compelling prejudice is inevitable and "jury instructions or some other remedy short of severance will not work." *United States v. Lopez*, 649 F.3d 1222, 1234 (11th Cir. 2011). "Severance is justified . . . only if the prejudice flowing from a joint trial is clearly beyond the

curative powers of [cautionary] instructions." *United States v. Baker*, 432 F.3d 1189, 1237 (11th Cir. 2005). "To succeed on appeal the Defendant must carry the heavy burden of demonstrating the lack of a fair trial due to actual, compelling prejudice." *United States v. Chavez*, 584 F.3d 1354, 1360 (11th Cir. 2009).

The district court instructed the jury that "the case of each defendant should be considered separately and individually" and "each defendant is on trial only for the specific offenses alleged against him in the indictment." No case, rule, or statute Starks could cite would render it plain that any actual, compelling prejudice of his joint trial with Byrd was clearly beyond the curative power of these instructions. He therefore cannot show the court plainly erred in declining to sever his trial from Byrd's.

## V.

Finally, Starks also contends his sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for an abuse of discretion and will reverse "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [18 U.S.C.] § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted).

14

Starks has not shown his sentence was substantively unreasonable. Although his carjacking sentence exceeded Byrd's and his guidelines range, the district court thoroughly explained it was departing upward to *avoid* unwarranted sentencing disparities as much as was feasible because Starks's conduct was more egregious. *See* 18 U.S.C. § 353(a)(6). Starks, the court concluded, was the group's ringleader who initiated conversation about a robbery, decided they needed a getaway car, selected K.E.N.'s car, and chose which convenience store to rob. And he coerced Flowers into participating at gunpoint. Further, in light of the testimony at his sentencing, the court found the guidelines range underrepresented Starks's past criminal activity. *See id.* § 3553(a)(1). After thorough consideration, the court decided the sentencing factors, especially the nature and characteristics of Starks's participation and the need to protect the public from the unrepentant Starks's future crimes, made an above-guidelines sentence necessary. *See id.* § 3553(a)(1), (2). We find no abuse of discretion in that conclusion.

## VI.

After careful review of the record, we affirm the convictions and sentences of Starks and Byrd. The evidence was sufficient for the jury to convict both of them on all counts. There was no plain error in sentencing Byrd to the statutory mandatory minimums for his convictions. And Starks has not shown the district

15

court plainly erred in failing to sever his trial from Byrd's or abused its discretion in fashioning his sentence.

**AFFIRMED**.